UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SUGAR BAY CLUB & RESORT CORP. | CIVIL ACTION |
| VERSUS | NO: 23-5480 |
| AGENCY PROJECT MANAGEMENT, LLC, ET AL. | SECTION: "J"(5) |

### ORDER& REASONS

Before the Court are two *Motions for Summary Judgment*. The first was filed by Plaintiff Sugar Bay Club & Resort Corp. ("Sugar Bay") **(Rec. Doc. 32).** Defendant CRSC, LLC ("CRSC") has filed an opposition (Rec. Doc. 38) and Sugar Bay has replied. (Rec. Doc. 41). Defendant CRSC has also filed a cross motion for summary judgment **(Rec. Doc. 39)** which Sugar Bay and Intervenor Green Earth Engineering Services Corp. have opposed. (Rec. Docs. 44, 45). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that CRSC's motion should be **GRANTED**, and Sugar Bay's motion should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

The above-captioned matter is a dispute between subcontractors involved in the cleanup after Hurricanes Maria and Irma hit the U.S. Virgin Islands in 2017. Prime contractor AECOM Caribe, LLP ("AECOM") was hired using funds from the Federal Emergency Management Agency ("FEMA") to assist in the recovery efforts in the aftermath of the storms. AECOM then entered a subcontract with Defendant

1

CRSC who then entered an additional subcontract with Agency Project Management ("APM") which included a "pay when paid" clause. APM then entered into further subcontracts with Plaintiff Sugar Bay Club & Resort Corporation ("Sugar Bay") and Intervenor Green Earth Engineer Services Corp. ("GEES"). However, APM allegedly became insolvent at some point after entering into these agreements. Sugar Bay is now a judgment creditor of APM, and GEES is the assignee of APM's accounts receivable.

Upon receipt of funds from AECOM, and in light of the multiple claimants owed payment by APM, CRSC began a separate interpleader action in Section B of this Court. *See CRSC, LLC v. Blue Elephant Financing, LLC, et al.*, No. 22-1315 (E.D. La.). CRSC received $1,607,272.83 from AECOM due to APM, but only deposited $1,366,181,91 of those funds into the registry of the Court for disbursal. CRSC retained the remaining $241,090.92. Sugar Bay has moved for summary judgment, contending that CRSC is illegally retaining these funds and that they should have been disbursed when they were received under the "pay when paid" contract between APM and CRSC. CRSC contends that it is entitled to withhold these funds necessary for costs and attorney's fees and that Sugar Bay has not met the requirements of an oblique action.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

3

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Both CRSC and Sugar Bay have moved for summary judgment in this matter. CRSC argues that Sugar Bay has no right to bring an oblique action and that both Sugar Bay and GEES's claims fail because CRSC has the right to retain the $241,090.92 it did not place into the registry of this Court. Sugar Bay argues that CRSC had no right of retainage in the contract between CRSC and APM and therefore must disburse the retained funds immediately under the "pay when paid" contract.

I. **SUGAR BAY'S RIGHT TO BRING AN OBLIQUE ACTION**

Defendant CRSC argues that Sugar Bay's claim should be dismissed because Sugar Bay cannot prove an essential element necessary for an oblique action: that APM is actually insolvent. An oblique action is governed by Louisiana Civil Code article 2044 which provides that "[i]f an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself . . . ." "The language of the article makes it clear that an insolvent obligor must fail to act before an obligee

4

may assert an oblique action." *Najor v. Plaquemines Clay Co., LLC*, No. 13-5000, 2019 WL 1597872 *5 (E.D. La. April 15, 2019). "An obligor is insolvent when the total of his liabilities exceeds the total of his fairly appraised assets." La. Civ. Code art. 2037.

CRSC asserts that Sugar Bay has no evidence upon which to claim that APM is insolvent. Although CRSC admits it is not privy to APM's financial status, CRSC asserts that "APM clearly is not insolvent as to the sum claimed to be owed by Sugar Bay." (Rec. Doc. 39-2, at 10). CRSC reasons that APM is still owed an additional $84,587.39 from AECOM which it asserts should be counted as an asset for purposes of determining insolvency since Sugar Bay is only owed an additional $59,449.00. Furthermore, CRSC argues that even if APM is insolvent, Sugar Bay cannot show that this insolvency is caused or exacerbated by APM failing to exercise a right as required by article 2044. Instead, APM, through CRSC, decreased its insolvency through the interpleader action in Section B of this Court.

Rather than arguing it has provided evidence sufficient to prove APM's insolvency, Sugar Bay instead argues that CRSC has not shown that APM is *solvent*. Sugar Bay argues that fact discovery has not closed, nor has this Court even entered a scheduling order setting a date to end discovery. Sugar Bay

> expects to elicit documents and testimony from APM directly that is (sic) insolvent consistent with the allegations of the First Amended Complaint, that APM has been wholly absent from pursuing the collection of the debts owed it by CRSC quite intentionally because any funds it receives will be immediately payable to its creditors; and that APM's unwillingness to press CRSC is only making its financial situation worse.

5

(Rec. Doc. 44, at 2). Although CRSC is correct that APM is entitled to some assets from AECOM through CRSC, there is no evidence before the Court of the total amount of liabilities APM might also have. Therefore, the record is insufficient to determine whether APM is insolvent without further discovery.

As to GEES, CRSC does not attempt to claim that APM's assignment of rights was improper. Instead, CRSC argues that both the claims by GEES and Sugar Bay should be dismissed because CRSC is not currently indebted to APM. CRSC asserts that it has put all the money it currently owes to APM into the registry of the Court less the money it lawfully retained "to be reimbursed for having to defend this action filed by APM's vendors." (Rec. Doc. 39-2, at 11). Additionally, CRSC asserts that it has already incurred costs subject to reimbursement by APM when it paid a $27,172.56 fine levied by the U.S. Department of Labor for underpaid wages owed to APM's employees. *Id.* at 12. Therefore, CRSC argues that GEES and Sugar Bay's claims should be dismissed because "until final payment is made by AECOM to CRSC, APM has been fully satisfied under the Subcontract." (Rec. Doc. 39-2, at 13).

## II.  CRSC's Right to Retainage

Sugar Bay's motion for summary judgment turns on the same issue raised by CRSC regarding CRSC's current indebtedness. Sugar Bay asserts that CRSC has illegally retained $241,090.92 which should have been deposited into the registry of the Court in the interpleader action CRSC filed in 2022 which has since been dismissed. Neither party disputes that CRSC retained this amount, merely whether it was entitled to do so. Sugar Bay argues that the contract between CRSC and APM

6

is a "pay when paid" contract and therefore any funds CRSC owes to APM, including the $241,090.92 it retained, should be immediately turned over to APM's creditors. A "pay when paid" term in a contract "[serves] to retard or delay the general contractor's payment until the occurrence of an event (owner's payment to contractor), contemplated surely to take place in the anticipated normal course of events." *Southern States Masonry, Inc. v. J.A. Jones Const. Co.*, 507 So.2d 198, 204 (La. 1987). *See also Pacific Lining Co., Inc., v. Algernon-Blair Const. Co.*, 819 F.2d 602 (5th Cir. 1987) ("these provisions are simply time of payment provisions, and the general contractors and their sureties are obligated for the full amount to the subcontractors"). The contract between CRSC and APM provides that "Payment will be issued to Subcontractor once Contractor receives the funds from Owner. This is a 'pay when paid' contract." (Rec. Doc. 32-3, at 1). CRSC has received $241,090.92 from AECOM due to APM. Therefore, Sugar Bay asserts that the most reasonable interpretation of the contract between CRSC and APM requires immediate payment of these funds once received.

In opposition and in its motion for summary judgment, CRSC argues that the contract with APM allows for CRSC to retain funds necessary for attorney's fees and costs because it incorporates all the terms of the Master Contract between AECOM and CRSC. The subcontract between CRSC and APM provides:

> WHEREAS, Contractor has entered into a General Contract with AECOM CARIBE, LLP . . . to furnish all labor and materials and perform all work required for the Sheltering Temporary Essential Power ("STEPS") . . .in strict accordance with the specifications, schedules and provided in the Master Contract, the terms of which are

7

> incorporated herein by reference as if copied in extenso and accepted by Subcontractor.

(Rec. Doc. 32-3, at 1). The Master Contract between AECOM and CRSC does allow AECOM to withhold payment for numerous reasons including for "claims or liens chargeable to Subcontractor, . . . monies paid by AECOM on behalf of or for the benefit of Subcontractor, . . . and any costs or liability AECOM has incurred or may incur for which Subcontractor may be responsible under any other agreement between the parties." (Rec. Doc. 38-3, at 7). It also provides that "AECOM at its sole discretion may elect to hold up to five percent (5%) retainage, with a total not to exceed amount of $2,000,000 to be released upon final subcontract completion warranty period." *Id.* at 6. CRSC argues that these terms granted to AECOM in the Master Contract flow through to benefit CRSC in its contract with APM.

In its reply, Sugar Bay argues that the contract between APM and CRSC only meant to incorporate the "specifications" and "schedules" from the Master Contract, not each and every term. (Rec. Doc. 41, at 2). The relevant language provides that APM is to perform its contractual duties "in strict accordance with the specifications, schedules and provided in the Master Contract, the terms of which are incorporated herein by reference as if copied in extenso and accepted by Subcontractor." (Rec. Doc. 32-3, at 1). Sugar Bay would have the Court read "the terms of which are incorporated here" to be a clause applying only to the specifications and schedules of the Master Contract while CRSC would read this clause as applying to the Master Contract as a whole.

The cardinal rule of contract interpretation is to determine and enforce the intent of the parties. *See* 11 Williston on Contracts § 32:2 (4th ed.). Sugar Bay would have the Court determine that the contractual provision at issue contains a clear ambiguity preventing the Court from determining intent: whether the parties intended to only incorporate the specifications and schedules of the Master Contract or whether they intended to incorporate all terms and bestow flow through rights on CRSC. However, "contracts must be interpreted in a common-sense fashion, giving to the words of the contract their common and usual significance. Contract interpretation centers on the parties' intent. But the text is the first and best evidence of that intent." *Parkcrest Builders, LLC v. Liberty Mutual Insurance Co.*, 26 F.4th 691, 695 (5th Cir. 2022) (cleaned up). Additionally, contract provisions should be interpreted such that a provision is rendered *effective*, rather than ineffective. *Id.* at 696 (citing *Lobell v. Rosenberg*, 186 So.3d 83, 89 (La. 2015)).

The sole question of contract interpretation before the Court is what does "the terms of which are incorporated here" modify. Reading this phrase in context with the rest of the relevant provision, it is clear that this phrase is meant to apply to the Master Contract as a whole. APM is already bound to carry out the work contemplated in the agreement "in strict accordance with the specifications, schedules." There would be no need to reiterate that the specifications and schedules were incorporated into the contract between APM and CRSC when APM was already strictly bound to act in accordance with these terms. Rather, the only logical meaning of "the terms of which are incorporated here" is that the parties intended it to apply

9

to the Master Contract as a whole. To determine otherwise would be to deem this provision superfluous and ineffective. Although the contract provision may be inartfully drafted, this Court cannot find an ambiguity that would create a genuine issue of material fact as to the parties' intent. It is clear that the contract between APM and CRSC fully incorporated all the terms of the Master Contract including the terms that allow CRSC to withhold retainage for attorney's fees and costs relating to litigation brought by APM's vendors and subcontractors. Therefore, Sugar Bay's oblique action and GEES claims based on assignment of rights must be dismissed because CRSC is not currently indebted to APM.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Sugar Bay's *Motion for Summary Judgment* **(Rec. Docs. 32)** is **DENIED** and CRSC's *Motion for Summary Judgment* **(Rec. Doc. 39)** is **GRANTED.**

New Orleans, Louisiana, this 6th day of June, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE